# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Case No. 1:19-cv-01948-DDD-STV

DUSTIN E. SULLIVAN, and
NANA NAISBITT,

    Plaintiffs,

v.

NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA,

    Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

Two or three large boulders became dislodged and tumbled down the steep hillside behind Plaintiffs' home, crashing into and through it. Plaintiffs had an insurance policy with Defendant generally covering damage to the home. But the policy did not cover damages caused by a "landslide" or "any other earth movement." Believing those exclusions applied to Plaintiffs' insurance claim, Defendant denied coverage. The question for the Court, raised by Defendant's motion for summary judgment, is whether the plain and ordinary meaning of the term "earth movement," as expressed in the policy, includes falling rocks like ones that damaged Plaintiffs' house. The Court concludes that it does and therefore **GRANTS** summary judgment for Defendant.

### BACKGROUND

The material facts are not in dispute. Plaintiffs Dustin Sullivan and Nana Naisbitt were the owners of a log cabin home situated at the bottom of a steep hillside in La Plata County, Colorado. On August 19,

2018, two or three boulders located uphill became dislodged, tumbled down the hillside, and collided with and rolled through the home, causing damage.

The home was insured by Defendant Nationwide Affinity Insurance Company of America, and Plaintiffs submitted a timely claim. But Plaintiffs' homeowners' policy did not insure for loss caused directly or indirectly by "earth movement." According to the policy,

> Earth Movement means:
>
> **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;
>
> **b.** Landslide, mudslide, or mudflow;
>
> **c.** Subsidence or sinkhole; or
>
> **d.** Any other earth movement including earth sinking, rising or shifting;
>
> caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the damage caused by the ensuing cause of loss.

(Doc. 20-3, at 26.) Losses due to "earth movement" are excluded from coverage "regardless of any other cause or event contributing concurrently or in any sequence to the loss." (*Id.*)

To investigate the damage to the home, Nationwide hired an engineering firm and a geological firm. The engineering report found that "two rocks dislodged from the upper part of the mountain slope (located at the south side of the property) accidentally and were not influenced by meteorological conditions such as torrential rain or high winds." (Botic Report, Doc. 20-1, at 7.) The geological report noted that "[r]ockfall hazard exists wherever rock has the potential to dislodge and move

downhill by forces of gravity" and concluded that "[r]ockfall hazards exist at the subject property . . . evidenced by numerous rocks from both recent and relict rockfall events that scatter the subject property, most highly concentrated in the transition zone" where the home was. (Trautner Report, Doc. 20-2, at 8.) It continued:

> [T]he soils produced by weathering of the sedimentary units in the area - particularly shale and claystone units - and eolian deposits often have expansive characteristics and may warrant additional foundation design considerations. . . .
>
> It is common for rocks to break apart during impact in a rockfall event as it seems was the case during the August 19, 2018 event; however, this is not a given, and there is evidence of boulders in excess of 10 feet diameter having fallen along this slope in the past. There are three large fragments of rock deposited in the August 19, 2018 event that measure 4 by 2 feet, 3 by 2 feet, and 5 by 4 feet, and now rest in the former closet, former kitchen, and yard, respectively.

(*Id.*) Based on these determinations, Nationwide denied Plaintiffs' claim for coverage, stating: "The rocks approximately 300 vertical feet above the valley bottom on the rear section of the described location broke loose due to erosion, settling, and earth movement." (Doc. 20-6.)

Plaintiffs hired a geological engineer to "review [the reports commissioned by Nationwide] and provide technical opinions on how th[ose] reports relate to occurrence of the rockfall." (West Report, Doc. 23-2, at 1.) The resulting report generally opined that from "failure mechanism, materials, movement, engineering analysis and mitigation perspectives, rockfalls and landslides are distinctly different. The use of the term landslide to describe a rockfall, or vice versa, is incorrect." (*Id.* at 7.)

3

## DISCUSSION

The question for the Court is whether the "earth movement" exclusion in Plaintiffs' policy with Nationwide bars recovery for damage caused by naturally falling rocks or boulders. Before the Court are two pending motions. The first is Nationwide's motion for summary judgment. (Doc. 20.) The second is Plaintiffs' motion for the Court to certify the legal question at hand to the Colorado Supreme Court. (Doc. 25.)

In diversity cases like this one, federal courts apply state law and must defer to the decisions of the controlling state's highest court. *Kokins v. Teleflex,* Inc., 621 F.3d 1290, 1295 (10th Cir. 2010). If that court, here the Colorado Supreme Court, has not resolved the issue presented, a federal court is generally tasked to predict what the Colorado Supreme Court would decide. *Farmers Alliance Mutual Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980). Or, as the Court is permitted to do here, a federal court may, at its discretion, certify questions arising under state law to that court. *See* Colo. App. R. 21.1.

Here, Plaintiffs are correct that, even though "earth movement" exclusion provisions appear to be in widespread use, the Colorado Supreme Court has not decided whether a handful of falling boulders (i.e., a "rockfall") qualifies as either a "landslide" or "other earth movement" under the provision at issue or others like it.

The certification process is a useful tool, one the Court might invoke under other circumstances. But "certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012). In this case, the Court finds apt Judge Blackburn's assessment of another attempt to certify a question of insurance contract interpretation to the Colorado Supreme Court:

4

> The questions proposed for certification by Dish are, in essence, insurance coverage questions which require interpretation of the language of insurance policies . . . . In federal court, such exercises are routine rather than unusual.
>
> It may be that the Colorado Supreme Court has not issued opinions that constitute controlling precedent on the specific insurance coverage issues presented in the amended complaint, but there is a well-developed body of Colorado law on interpretation of contracts, including insurance policies. That law provides a reasonably clear and principled course to the resolution of the issues raised in this case. Thus, it is not appropriate to certify to the Colorado Supreme Court the two questions for which Dish seeks certification.

*Ace Am. Ins. Co. v. Dish Network, LLC*, No. 13-CV-00560-REB-MEH, 2014 WL 811993, at *2 (D. Colo. Mar. 3, 2014). There may be no binding Colorado authority answering the precise question before the Court, but the controlling principles, as discussed below, are well-established. There are also are many decisions available, including one from this Court, providing a reasonably clear and principled course to the resolution of the present issue. There is no need to certify Plaintiffs' question.

The Court turns to whether Nationwide is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) ("A court's interpretation of an insurance contract is a matter of law."). In Colorado, an insurance policy is merely an agreement that courts should understand in line with well-settled principles of contract interpretation. *See Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999); *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). So, courts should give the words contained in a policy their plain and ordinary meaning, *Chacon,* 788 P.2d at 750, and they are "not at liberty to raise doubts where there are none." *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 683 (Colo. 1989).

5

The parties do not dispute that that the policy in question generally covered Plaintiffs' home. They only dispute whether the "earth movement" exclusion bars Plaintiffs' claim. To be entitled to summary judgment, Nationwide must "establish that the exclusion applies and is not subject to any other reasonable interpretation." *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006) (describing burden-shifting approach applicable to exclusions and citing *American Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991)); *see also Chacon*, 788 P.2d at 750 (explaining courts must construe ambiguous provisions against the insurer). Nationwide argues that a rockfall is no different than a "landslide" or, at the least, a type of "other earth movement" excluded by the policy.

As Nationwide reports, one Colorado appellate case considering an "earth movement" exclusion provides some guidance. In *Hoang v. Monterra Homes (Powderhorn) LLC*, the Colorado Court of Appeals considered an exclusion for property damage related to "earthquake, landslide, mud flow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud." 129 P.3d 1028, 1035–36 (Colo. App. 2005), *as modified on denial of reh'g* (May 12, 2005), *rev'd on other grounds*, 149 P.3d 798 (Colo. 2007). The Court of Appeals rejected the trial court's holding, which determined that exclusion ambiguous as to whether it applied only to large-scale or catastrophic earth movement, finding that such an "interpretation is contrary to the plain language of the policies, [ ] which unambiguously exclude coverage for 'any' expansion or other movement of land earth, or mud." *Id.* at 1036. That observation, though broad and not strictly on point, encompasses the factual scenario before the Court.

6

Nationwide further observes that a decision of this Court is a nearly identical factual fit. In *Bulinski v. State Farm Fire & Cas. Co.*, a large rock detached from a cliff face near the plaintiffs' house and struck it—breaking through the south wall and first floor. No. 16-CV-02066-RPM, 2017 WL 2459751, at *1 (D. Colo. June 7, 2017). The plaintiffs filed a claim, but the policy at issue excluded "Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces." *Id.* In granting summary judgment for the insurer, this Court held that the plaintiffs'

> loss was caused by the movement of a large rock. That event clearly and unambiguously falls within the Policy definition of earth movement, whether it is considered to be one of the "included but not limited to" named examples—such as erosion or landslide—or simply to fall within the broader language excluding "the sinking, rising, shifting, expanding or contracting of earth," and "movement resulting from . . . any other external forces."

*Id.* at *2 (quoting *Parker v. Safeco Ins. Co. of America*, 376 P.3d 114, 119 (Mont. 2016)); *see also id.* at n.2 (defining "landslide" as "the downward falling or sliding of a mass of soil, detritus, or rock on or from a steep slope."). The Montana Supreme Court in *Parker* had unequivocally determined, and this Court agreed, that "the fall of a large boulder is a landslide," *Parker*, 376 P.3d at 117, in a plain-language sense.

There are numerous other cases holding that a falling rock or rocks is a "landslide" or "other earth movement" within the meaning of these (apparently common) exclusion provisions. *See, e.g.*, *Dupps v. Travelers Ins. Co.*, 80 F.3d 312, 314 (8th Cir. 1996) ("The policy explicitly excludes recovery for damage caused by 'earth movement,' including a

7

landslide, regardless of what might have caused the earth movement. The ordinary meaning of the term 'landslide' includes rocks falling down a bluff." (citing *The Random House Dictionary of the English Language* 1080 (2d ed. 1987)); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 8 (W. Va. 1998) ("We hold that the plain, ordinary meaning of the word 'landslide' in an insurance policy contemplates a sliding down of a mass of soil or rock on or from a steep slope." (citing 13A G. Couch, *Couch on Insurance 2d* 48:180 (1982) ("What Constitutes a Landslide")); *Western United Ins. Co. v. Heighton*, No. 2:14CV435DAK, 2016 WL 4916785, at *3 (D. Utah Sept. 14, 2016) ("The common understanding of the term landslide includes rocks and soil falling down a slope. The court finds nothing ambiguous about the policy's use of the term 'landslide' as an example of earth movement. The court also finds nothing ambiguous about whether the term 'landslide' would apply to [the detaching of a large rock mass from a nearby cliff]."). These cases all rejected the notion that an 'earth movement' exclusion was ambiguous as to whether it included damage caused by large falling rocks.

Plaintiffs argue, in response, that if the Court were to give effect to the reasonable expectations of the parties and to construe the policy narrowly against Nationwide, the "earth movement" exclusion is at least impermissibly ambiguous. *See Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007), *as modified*, (Mar. 5, 2007). Their polestar case is *Kresge v State Farm Fire and Casualty Co.*, No. 2011 CV 008352, 2012 WL 8499731 (Colo. Dist. Ct. Nov. 04, 2012), a Colorado state trial court decision. There, a single boulder fell on the insured's property and the insurer denied coverage under an "earth movement" exclusion. The insured argued that a boulder is not "earth" any more than a tree or an animal carcass, and that a single boulder cannot be a "landslide." *Id.* at *4. In reaching its decision that the exclusion was ambiguous, the trial

8

court first observed that "earth movement" exclusions were historically intended "to protect insurance companies from having to pay out on policies when a catastrophic event caused damage to numerous policyholders." *Id.* at *3. It then reported that other state courts had recently held that earth movement exclusions are ambiguous. So, it determined that there was "so much judicial disagreement" about such exclusions that "earth movement" exclusions must be ambiguous. *Id.* at *4–5.

The Court does not agree with *Kresge*. First, *Kresge*'s observation that "earth movement" exclusions were historically meant to address calamitous, widespread events is beside the point. The Colorado Court of Appeals, before *Kresge*, rejected the proposition that these clauses only applied to large-scale events. *Hoang*, 129 P.3d at 1036. Second, the Court agrees with the Montana Supreme Court's criticism of *Kresge*: The "vast majority of those cases [finding ambiguity] were decided in the context of disputes over whether the exclusion applied to human-caused events." *Parker*, 376 P.3d at 119.

For example, in *Bly v. Auto Owners Ins. Co.*, cited in *Kresge*, the Supreme Court of Alaska held an "earth movement" clause that comprehended only natural events was "at best ambiguous as to whether [it included] the vibrations caused by the passing vehicles." 437 So. 2d 495, 497 (Ala. 1983). Similarly, in *Powell v. Liberty Mut. Fire Ins. Co.*, also cited in *Kresge*, the court commented that the exclusion at issue there "include[d] a list of examples of mostly naturally occurring events as well as possibly human-caused events. Thus, the [ ] policy is ambiguous as to what precisely earth movement is when it is not a type of widespread, calamitous event." 252 P.3d 668, 673 (Nev. 2011). Here, the parties raise no questions of human cause, and as the court noted in *Parker*, and the Court repeats here, the "policy in this case applies the exclusion

9

to earth movement regardless of its cause, making the debate over human-caused events irrelevant." 376 P.3d at 119.

Despite their general lack of persuasive legal authority, Plaintiffs insist that the West Report, which concluded that landslides and rockfalls are technically distinct, demonstrates ambiguity within the meaning of the policy. Nationwide is correct, however, that courts tasked with determining the plain and ordinary meaning of insurance provisions are not required to, and shouldn't, consider expert-provided interpretations. *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 240 (Colo. 1992); *Kirkpatrick v. Colorado Farm Bureau Mut. Ins. Co.*, 839 P.2d 514, 516 (Colo. App. 1992). That would be enough to end the inquiry because the reasoning in cases like *Bulinski*, *Dupps*, *Murray*, and *Heighton* have convinced the Court that the exclusion at issue is not ambiguous, at least with respect to natural events.

But were the Court to entertain Plaintiffs' argument, it is unconvinced by the West Report's semantic conclusions; there is no evidence that an ordinary policyholder would distinguish between landslides and rockfalls. And, at any rate, that distinction is immaterial. For example, Citing the Colorado Geological Survey, the West Report states that "Landslides (as opposed to rockfalls) [ ] occur when masses of soil and rock move downward and outward from a slope." (Doc. 23-2, at 5.) That view is hyper-technical. More valuable to a plain meaning determination would be the "Planning for Hazards" Guide, produced by the Colorado Department of Local Affairs, which provides Colorado-specific information to counties and municipalities about how to assess a community's risk level to hazards. That Guide makes no material distinction: "Rockfalls are a newly detached mass of rock falling from a cliff or down

10

a very steep slope. Rockfalls are the fastest type of landslide."[1] The West Report could have included this information but didn't. If it matters whether landslides and rockfalls are the same, while "some courts have found certain earth movement provision to be ambiguous, [Plaintiffs are] unable to cite to any court holding that the plain and ordinary meaning of the term landslide would not include a rockfall." *Heighton*, 2016 WL 4916785, at *3.

Ultimately, however, Nationwide is correct that it is immaterial whether rockfalls are technically and taxonomically distinct from landslides. Even the West Report concludes that "[r]ockfalls and landslides are processes within the broader classification of mass wasting." (Doc. 23-2, at 5.) And mass wasting is a "general term for the dislodgement and downslope transport of soil and rock material under the direct application of gravitational body stresses . . . [and includes] rapid movements such as rockfalls, rockslides, and debris flows." (*Id.* at 2.)[2] Plaintiffs cannot seriously argue that "mass wasting," as referenced by the West Report, is not a form of "other earth movement" excluded by the policy, even if a rockfall is not technically a "landslide."

The Court therefore holds, based on its review of the Colorado and other authority, that the "earth movement" exclusion in Plaintiffs' insurance policy barred their recovery for the damages caused by falling rocks or boulders that impacted their home on or about August 19, 2018. The Court believes the Colorado Supreme Court would reach the same

---

[1] "Landslide, Mud/Debris Flow, and Rockfall," Planning for Hazards, Land Use Solutions for Colorado, COLORADO DEPARTMENT OF LOCAL AFFAIRS (accessed Feb. 13, 2020).

[2] *See also* "Mass Wasting," NATIONAL PARK SERVICE (accessed Feb. 13, 2020) ("Mass wasting is the movement of rock and soil down slope under the influence of gravity. Rock falls, slumps, and debris flows are all examples of mass wasting.").

11

result. Nationwide properly denied coverage, and Plaintiffs' claims for breach of contract and bad faith fail. *See MarkWest Hydrocarbon, Inc. v. Liberty Mutual Insurance Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage.").

## CONCLUSION

For the foregoing reasons, Nationwide's motion for summary judgment (Doc. 20) is **GRANTED**. Plaintiffs' motion to certify a question to the Colorado Supreme Court (Doc. 25) is **DENIED**. Judgment shall enter in favor of Nationwide, and this case shall be closed.

Dated: February 18, 2020.   BY THE COURT:

Daniel D. Domenico
United States District Judge